## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## WHITE PLAINS

| | |
|---|---|
| Peter Hoffmann, individually and on behalf of all others similarly situated, | 7:21-cv-09642 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kashi Sales, L.L.C., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Kashi Sales, L.L.C. ("Defendant") manufactures, labels, markets, and sells Ripe Strawberry Soft Baked Breakfast Bars, purporting to contain a non-de minimis amount of strawberry ingredients and more strawberries than other fruit ingredients under the Kashi brand ("Product").



**I.     STRAWBERRY AND HONEY CLAIMS**

2.     The front label shows a bar with bright red filling, a background of various shades of red, defendant's logo with a swaying stalk of wheat, the statements, "Ripe Strawberry, 3g Fiber,*" "Made with Wildflower Honey," and "10g Whole Grains," and a seal indicating "Non-GMO Project Verified."

3.     The back of the package shows a similar red background, two fresh, ripe strawberries, a smattering of freshly harvested oats, the statements, "Simply Delicious," and Delightfully Nutritious," and states:

# Good Vibes in Every Bar

These bars were made for you with love. Love for delicious snacks that high five your taste buds. Love for simple ingredients, like strawberries and whole grains. And love for our farmers, our community, and our planet. Grab a bar and spread the good vibes!



4.      The representations are misleading because they give consumers the impression the fruit filling contains a greater relative and absolute amount of strawberry and honey ingredients than it does.

## II.   INCREASE IN CONSUMER SNACKING FUELS EMPHASIS ON HEALTHY INGREDIENTS

5.      Research has shown that "consumers are eating fewer meals, yet snacking more than ever."[1]

6.      Defendant is aware that a greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what "people don't get enough of at meals."[2]

7.      According to one company, "[A]s snacking increases, so too does the focus on healthy products and ingredients."[3]

8.      Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[4]

## III.   CONSUMERS VALUE STRAWBERRIES

9.      Strawberries are one of the foods American consumers increasingly turn to for adding value to all types of food and "the most popular berry fruit in the world."

10.     According to the U.S. Department of Food and Agriculture, "Americans now consume twice as many strawberries as they did two decades ago."[5]

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] The Story on Snacking, Kellogg's Nutrition.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.
[4] FONA International, Trend Insight: Indulgence, November 28, 2018.
[5] The California Strawberry Commission, Consumer Trends: American Strawberry Consumption Doubles, May 7, 2013.

11.    Reasons for consumers choosing strawberries over other fruits include its taste, texture, and adaptability.

12.    More significant than the taste of strawberries though, according to WebMD, is the ability of strawberries to "protect your heart, increase HDL (good) cholesterol, lower your blood pressure, and guard against cancer."[6]

13.    These benefits are because strawberries have one of the highest levels of nutrient-density of all fruits.

14.    Strawberries are "an excellent source of vitamin C," necessary for immune and skin health.

15.    One serving of strawberries provides more vitamin C than an orange.[7]

16.    Strawberries have uniquely high levels of antioxidants known as polyphenols.[8]

17.    Polyphenols are micronutrients that naturally occur in plants.

18.    These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.[9]

19.    Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

20.    These benefits from strawberries cannot be provided by strawberry "flavor" but from strawberry ingredients.

---

[6] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.

[7] Adda Bjarnadottir, MS, RDN, Strawberries 101: Nutrition Facts and Health Benefits, Healthline.com, March 27, 2019; Sadia Afrin, et al. "Promising health benefits of the strawberry: a focus on clinical studies." *Journal of agricultural and food chemistry* 64.22 (2016): 4435-4449.

[8] Tamara Y. Forbes-Hernandez, et al. "The healthy effects of strawberry polyphenols: which strategy behind antioxidant capacity?." *Critical reviews in food science and nutrition* 56.sup1 (2016): S46-S59.

[9] Francesca Giampieri, et al. "Strawberry consumption improves aging-associated impairments, mitochondrial biogenesis and functionality through the AMP-activated protein kinase signaling cascade." *Food chemistry* 234 (2017): 464-471; Francesca Giampieri, et al. "The healthy effects of strawberry bioactive compounds on molecular pathways related to chronic diseases." *Annals of the New York Academy of Sciences* 1398.1 (2017): 62-71.

21.   "Flavor" refers to compounds extracted from a food which is used solely for taste and lacks any nutritional value.

## IV.   STRAWBERRIES ARE VALUED ABOVE OTHER FRUITS

22.   It is not just consumers' subjective preferences which value strawberries over other fruits.

23.   Market price data confirms strawberries are the most expensive of the major fruits tracked by the Bureau of Labor Statistics ("BLS") in its research on consumer prices.



24.   According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[10]

25.   According to the recent data from the USDA, pears are $1.552 per pound, while strawberries, at $2.318 per pound, are almost fifty (50) percent more expensive.

---

[10] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.



| Pears, Anjou Units: $ per LB | Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| | 2020 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| | 2019 | 1.634 | 1.586 | 1.601 | 1.601 | 1.635 | 1.614 | -0.4% | 1.552 | NA | NA | NA | NA | NA |
| | 2018 | 1.641 | 1.560 | 1.558 | 1.521 | 1.568 | 1.621 | -1.1% | 1.662 | NA | NA | NA | 1.513 | 1.570 |
| | 2017 | 1.577 | 1.570 | 1.599 | 1.602 | 1.597 | 1.639 | -0.7% | 1.629 | 1.653 | NA | NA | 1.614 | 1.545 |

APU0000711413 Pears, Anjou

| Strawberries Units: $ per 12 oz | Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | 3.044 | 2.893 | 2.700 | 2.803 | 2.648 | 2.318 | 14.8% | NA | NA | NA | NA | NA | NA |
| | 2020 | 2.884 | 2.558 | 2.367 | NA | 2.174 | 2.020 | -2.2% | 2.020 | 2.214 | 2.234 | 2.745 | 2.934 | 3.290 |
| | 2019 | 3.279 | 2.872 | 2.475 | 2.504 | 1.972 | 2.066 | 6.6% | 2.111 | 2.010 | 2.153 | 2.402 | 2.604 | 3.096 |
| | 2018 | 2.872 | 2.492 | 2.227 | 2.475 | 2.079 | 1.938 | -0.7% | 2.007 | 2.004 | 2.147 | 2.216 | 2.502 | 3.166 |
| | 2017 | 2.612 | 2.367 | 2.318 | 2.204 | 2.060 | 1.952 | 1.5% | 2.036 | 1.979 | 2.256 | 2.335 | 2.863 | 3.089 |

APU0000711415 Strawberries, dry pint, per 12 oz. (340.2 gm)

## V. STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE THAT STRAWBERRIES ARE NOT MAIN FILLING INGREDIENT IN FILLING

26.    Federal and identical state regulations require that a food's front label truthfully describe the contents of a product.

27.    The labeling of the Product causes consumers to expect more strawberries and honey relative to other fruit filling and sweetener ingredients, than it has.

28.    The Product's name of "Ripe Strawberry – Soft-Baked Breakfast Bars," is false, misleading, and deceptive because it contains a *de minimis* amount of strawberries, and the fruit filling is mainly pear and apple ingredients.

Ingredients: Strawberry filling (pear juice concentrate, tapioca syrup, cane sugar, apple powder, strawberry puree concentrate, cornstarch, glycerin, natural flavors, elderberry juice concentrate for color), **Kashi Seven Whole Grain** flour (oats, hard red wheat, brown rice, rye, triticale, barley, buckwheat), whole wheat flour, whole grain oats, invert cane syrup, expeller pressed canola oil, honey, chicory root fiber, vegetable glycerin, tapioca syrup, leavening (sodium acid pyrophosphate, baking soda), soy lecithin, xanthan gum, natural flavors.

**Ingredients:** <mark>Strawberry filling (pear juice concentrate, tapioca syrup, cane sugar, apple powder, strawberry puree concentrate</mark>, cornstarch, glycerin, natural flavors, elderberry juice concentrate for color), **Kashi Seven Whole Grain** flour (oats, hard red wheat, brown rice, rye, triticale, barley, buckwheat), whole wheat flour, whole grain oats, invert cane syrup, expeller pressed canola oil, honey, chicory root fiber, vegetable glycerin, tapioca syrup, leavening (sodium acid pyrophosphate, baking soda), soy lecithin, xanthan gum, natural flavors.

29.    The relative amounts of the ingredients in the filling are determined based on their listing in order of predominance by weight. 21 C.F.R. § 101.4(a)(1).

30.    The most predominant ingredient is pear juice concentrate, followed by tapioca syrup, cane sugar, apple powder, and finally, strawberry puree concentrate.

31.    The "strawberry" filling contains more pear and apple ingredients than strawberry ingredients.

32.    Not only does the Product have a *de minimis* amount of strawberry ingredients, but it also contains more sugars – shown through tapioca syrup and cane sugar – than strawberries.

33.    The Product's name, "Ripe Strawberry Soft-Baked Breakfast Bars" is misleading because it highlights strawberries but does not include pears and apples, even though pears and apples are stated in the fine print on the ingredient list, or the addition of added strawberry flavoring through the "natural flavors" ingredient.

34.    Cereal bars which contain strawberries as their predominant filling ingredient are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative amount of strawberries by scouring the label.

35.     Cereal bars with predominant amount of strawberries comprising the filling exist in the marketplace and are not technologically or otherwise unfeasible to produce.

36.     For instance, competitor cereal bars from Market Pantry (Target) and Great Value (Walmart) are described as "Strawberry" but they put consumers on notice that their products have *less* strawberries than consumers would otherwise expect, through the statement, "Naturally Flavored."





37.   The Market Pantry and Great Value cereal bars also contain strawberries as their fillings' first ingredient, contrary to Defendant's Product.

38.   Consumers seeing defendant's Product, which exclusively promotes strawberries, and the more "restrained" or truthful labeling of competitors, will purchase defendant's Product, believing it is higher quality than it is.

39.   The Product is unable to confer any of the health-related benefits of strawberries, or taste like strawberries, because the amount of strawberry ingredients is *de minimis* or negligible.

## VI.   ADDED COLOR FURTHERS DECEPTION AS TO STRAWBERRY CONTENT

40.   According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."[11]

41.   To give consumers the false impression that the Product contains more strawberries than it does, it includes "elderberry juice concentrate for color."

42.   This causes the filling – mainly pears, apples and sugar – to look like strawberries, even though they are not strawberries and cannot substitute for strawberries to consumers.

43.   Without the added coloring, consumers would be suspect of a product labeled as only having strawberries, because the filling would be a more subdued tone instead of the bright red.

44.   This could cause consumers to inspect the ingredient list to determine the truth.

45.   According to the trade publication Food Processing, "If you were using elderberry juice concentrate to color strawberry jelly, the color would now be considered artificial since the elderberry juice concentrate is not inherent to the strawberry."

46.   However, the Product does not reveal the addition of this added coloring anywhere on the labeling, even though it is required to.

---

[11] Mark Anthony, Ph.D., Technical Editor, Natural Colors Contribute Micronutrients, Food Processing, Aug. 3, 2007.

## VII.  HONEY IS MISREPRESENTED AS MAIN SWEETENING INGREDIENT

47.    The front label promotes the presence of honey – "Made with Wildflower Honey."

48.    This representation conveys that honey is the exclusive, primary and/or most significant sweetener in the Product.

49.    However, the Product is sweetened primarily with sugar and contains only a miniscule amount of honey.

A.    <u>Sugar Disfavored as Sweetener</u>

50.    In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."

51.    The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."

52.    There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."

53.    In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."

54.    As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

55.    At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for

products with little or no added sugar.

56.     In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."

57.     As another observer of the food industry explained in May 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories…Sugar reduction will be one of the top marketing claims prominently featured on products  in   the  coming  year…"

58.     Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

59.      The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar…[and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."

B.   Consumer Preference for Products Sweetened with Honey Instead of Sugar

60.     Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar."

61.     A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."

62.     Referring to food products perceived as healthier, the Huffington Post reported that

"[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits."

63.     Honey is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.

64.     In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.

65.     Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

66.     Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

67.     Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

C.     Contrary to Representations, Honey is Present in De Minimis Amount and Product Is Sweetened Mainly with Sugar

68.     The sweeteners in the Product include tapioca syrup, cane sugar, invert cane syrup and honey.

69.     Among the sweeteners in the Product, honey is present in the lowest quantity.[12]

70.     The Product contains more canola oil than honey, yet the front label does not tout this ingredient.

---

[12] Even though honey is listed ahead of tapioca syrup, this ingredient is listed twice as part of the filling, ahead of honey.

71.     The representation that the Product is made with wildflower honey is misleading because reasonable consumers will expect honey to be present in a greater amount than it is.

## VIII. CONCLUSION

72.     The cost of using more strawberry and honey ingredients, relative to pears, apples and sugar, would be several cents per Product – not a significant addition to the price.

73.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

74.     By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening ingredients.

75.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

76.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

77.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

78.     The Product is sold for a price premium compared to other similar products, no less than approximately $4.59 for six 1.2 OZ (35g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

79.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28

U.S.C. § 1332(d)(2).

80.     The aggregate amount in controversy exceeds $5 million, including any statutory

damages, exclusive of interest and costs.

81.     Plaintiff Peter Hoffmann is a citizen of New York.

82.     Defendant Kashi Sales, L.L.C., is a Delaware limited liability company with a

principal place of business in Battle Creek, Calhoun County, Michigan and upon information and

belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

83.     Defendant's managing member is the Kellogg Sales Company, a Michigan

corporation.

84.     Plaintiff and defendant's managing member are citizens of different states.

85.     The class Plaintiff seeks to represent contains citizens of a state different from the

state defendant is a citizen of.

86.     Defendant transacts business within this District through sale of the Product within

this District, at convenience stores, grocery stores, drug stores, big box stores, membership stores,

and online, sold directly to residents of this District.

87.     Venue is in this District because plaintiff resides in this district and the actions giving

rise to the claims occurred within this district.

88.     Venue is in the White Plains Courthouse in this District because a substantial part of

the events or omissions giving rise to the claim occurred in Westchester County, i.e., Plaintiff's

purchase of the Product and his awareness of the issues described here.

Parties

89.    Plaintiff Peter Hoffmann is a citizen of Mount Vernon, Westchester County, New York.

90.    Plaintiff likes strawberries more than pears and apples, and prefers honey to sugar.

91.    Defendant Kashi Sales, L.L.C., is a Delaware limited liability company with a principal place of business in Battle Creek, Michigan, Calhoun County.

92.    Defendant is a leading seller of organic and healthy snacks, known for being transparent with its ingredients and corporate identity.

93.    Consumers expect they can trust what they are told by defendant.

94.    Defendant's image is exemplified by its logo, with a stalk of wheat running across its company name, epitomizing the connection to farmers, the land, and healthy ingredients.

95.    The Product is sold at tens of thousands of retail locations such as grocery stores, drug stores, big box stores, convenience stores, etc., and online.

96.    The Product is sold in boxes of six bars, among other sizes.

97.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from stores including ShopRite, 13 City Pl, White Plains, NY 10601, between August and September 2021, among other times.

98.    Plaintiff bought the Product because he expected it contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening ingredients because that is what the representations said and implied.

99.    Plaintiff relied on the words and images on the Product.

100.  Plaintiff bought the Product at or exceeding the above-referenced price.

101.  Plaintiff would not have purchased the Product if he knew the representations were

false and misleading or would have paid less for it.

102.  Plaintiff chose between Defendant's Product and similar products represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

103.  The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

104.  Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

105.  Plaintiff is unable to rely on the labeling of not only this Product, but other similar products, because he is unsure of whether their representations are truthful.

Class Allegations

106.  Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

>   **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.
>
>   **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Virginia, Delaware and Kansas, who purchased the Product during the statutes of limitations for each cause of action alleged

107.  Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

108.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

109.  Plaintiff is an adequate representative because his interests do not conflict with other members.

110.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

111.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

112.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

113.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

114.   Plaintiff incorporates by reference all preceding paragraphs.

115.   Plaintiff and class members desired to purchase a product that contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening ingredients.

116.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

117.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

118.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

119.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

120.   Plaintiff relied on the representations that the Product contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening

ingredients

121.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

122.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

123.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

124.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

125.   In addition, defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

126.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening ingredients.

127.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

128.   This duty is based on Defendant's outsized role in the market for this type of Product,

a preeminent and trusted brand in the realm of healthy snacks.

129.  Thus, the Product has a higher level of trust with consumers, more than other brands.

130.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

131.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

132.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

133.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

134.  Defendant had a duty to truthfully represent the Product, which it breached.

135.  This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as a leading seller of healthy snacks, marketed transparently.

136.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a preeminent purveyor of healthy snacks that honestly promoted its ingredients not just in the fine print of the ingredient list but on the front label.

137.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

138.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

139.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained more strawberry ingredients in the filling than non-strawberries, and more honey than non-honey sweetening ingredients.

140.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

141.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

142.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory

    claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

    experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   November 21, 2021

                                            Respectfully submitted,

                                            Sheehan & Associates, P.C.
                                            /s/Spencer Sheehan
                                            60 Cuttermill Rd Ste 409
                                            Great Neck NY 11021
                                            Tel: (516) 268-7080
                                            spencer@spencersheehan.com